463 P.2d 953 (1969)
Austin M. ANDREWS, doing business as Andy's Auto Car Wash, Plaintiff in Error,
v.
LIBERTY NATIONAL BANK & TRUST COMPANY OF OKLAHOMA CITY, a Corporation, Defendant in Error.
No. 42032.
Supreme Court of Oklahoma.
June 24, 1969.
Edward H. Ferrish, Midwest City, for plaintiff in error.
John C. Moran, Oklahoma City, for defendant in error.
*955 BLACKBIRD, Justice.
This appeal involves the defendant in error's right to recover certain installments allegedly due under a certain "EQUIPMENT LEASE AGREEMENT", or lease-purchase contract, plaintiff in error entered into with Culligan Water Conditioning, Inc., on June 1, 1964, pursuant to which said corporation installed a water softener, or conditioner, at his car wash establishment in Midwest City. On June 17th of the same year, Culligan Water Conditioning, Inc., hereinafter referred to merely as "Culligan", or "lessor", assigned the contract to defendant in error, which thereafter, in January, 1965, brought the present action as plaintiff, against plaintiff in error, as defendant, alleging that the latter had defaulted in payment of installments due under the contract. The latter two parties will hereinafter be referred to by their trial court designations of "plaintiff" and "defendant", except that defendant will sometimes be referred to by his contract designation of "lessee".
By the terms of said contract, Culligan, as lessor, leased the water softener, or conditioner, to defendant, as lessee, for a period of 48 months for a total rental of $3,584.00, payable in 47 monthly installments of $75.00 each (except the final installment of $59.00) beginning on January 15, 1964.
After alleging defendant's execution and delivery of said agreement to Culligan, as aforesaid, and said agreement's above-mentioned assignment to plaintiff, the latter's petition in this case alleged, among other things, that defendant had neglected and refused to pay the $75.00 installments due September 15, 1964, and each and every month thereafter, up to and including January 15, 1965. Plaintiff's said petition further alleged that, under the terms of said lease rental agreement, defendant's default in the payment of said installments gave plaintiff the right, under said agreement, to declare all remaining installments immediately due and payable, "* * * which right plaintiff hereby exercises, and declares all payments due and payable, which amount to $3,359.00, with interest thereon at the rate of 10% per annum from January 15, 1965, until paid." In said petition, plaintiff prayed judgment for the $3,359.00, with interest, an attorney's fee of $750.00, and its costs.
After the filing of plaintiff's said petition, defendant joined with another motion he filed, a motion that Culligan be made an additional defendant in the case, on the ground that this was essential to the determination of his rights in the controversy. This motion was overruled, with exceptions allowed defendant, and he was ordered to answer.
Pursuant to said order, defendant thereafter filed an answer, in which a qualified general denial prefaced allegations in said pleading's paragraphs 1, 2 and 3, to the effect that he was induced to enter into the lease agreement by Culligan's fraud and misrepresentation, effected by one of Culligan's salesmen representing that the water conditioner would provide water, without chemicals, for defendant's car wash, and further alleging that the conditioner caused streaking on the vehicles that were washed in defendant's establishment, after its installation there, thus causing defendant financial loss and requiring him to discontinue its use. In these paragraphs, defendant further alleged, in substance, that another of said salesman's misrepresentations upon which defendant relied in leasing the water softener or conditioner, was that the Midwest City water was so hard that such *956 equipment was required; whereas, in truth, said water was not hard. Defendant's answer further alleged that he was entitled to have the lease agreement cancelled, and held for naught, and he prayed for that to be done, that plaintiff be required to remove the water softener from his premises, and that he recover his costs and attorney's fees.
Thereafter, on motion of plaintiff, the court ordered paragraphs 1, 2 and 3 thereof, stricken from defendant's answer; and he thereafter filed an amended answer, in which he denied that he was indebted to plaintiff under the terms of the lease agreement, also denied that plaintiff was the lease agreement's holder in due course, or was the real party in interest, or had any right to bring the action. Defendant further alleged (among other things) that plaintiff and Culligan had entered into a conspiracy whereby they agreed that plaintiff would bring the action for Culligan. Defendant also denied that the "entire" sum, plaintiff sought to recover, had become due and payable under the lease agreement, and prayed that plaintiff take nothing, and that he be discharged with his costs.
At the trial before the court, without a jury, and during the cross-examination of Culligan's salesman, a Mr. H., who testified, on direct examination, as a witness for plaintiff, defense counsel elicited from said witness testimony that a certain document (the witness referred to as an "order sheet") had been signed by defendant about the same time as the subject lease agreement. When counsel offered this document into the evidence of the case as Defendant's Exhibit No. 1, counsel for plaintiff objected, and the court sustained said objection.
At the close of the trial, the court rendered judgment for plaintiff in the principal sum it prayed for, and, after the overruling of his motion for new trial, defendant lodged the present appeal.
Defendant's arguments concerning the trial court's alleged errors are presented under four propositions. As the third of these propositions, he asserts that said court erred in refusing to permit his introduction in evidence of the above mentioned document, which he refers to as a "memorandum agreement". As the case-made contains no copy, or facsimile, of any such document, we have no way of determining whether or not the trial court erred in excluding it. See Irwin v. Irwin, Okl., 416 P.2d 853. In the cited case, we held:
"This court cannot review alleged errors of the trial court in refusing admission of certain proffered evidence, unless such evidence, or the substance thereof, be in some proper manner incorporated in the case made, thereby enabling this court to determine whether or not there was error in its exclusion."
In, and under, his propositions 1 and 2, defendant contends that the trial court erred in overruling his hereinbefore mentioned motion to make Culligan an additional party defendant, and in ordering stricken from his original answer, its paragraphs 1, 2 and 3, which, as aforesaid, dealt with his alleged inducement to enter into the subject lease agreement by misrepresentations of one of Culligan's salesmen. (This alleged involvement of Culligan in procuring his execution of said contract comprised the basis for defendant's motion to make said corporation an additional defendant in the case.)
In his argument, defendant contends that the lease-purchase agreement he entered into with Culligan created a bailment, in which Culligan was the bailor, and he was the bailee. Defendant cites a quotation from 6 Am. Jur., "Bailments", sec. 323, to the effect that, in an action by a bailor's assignee, the bailee is entitled to all of the defenses that accrued against the bailor, before notice of the assignment. Assuming, without deciding, that said agreement was the basis of a bailment, we notice that *957 one of said agreement's paragraphs is as follows:
"Lessee acknowledges receipt of and accepts Equipment, and acknowledges that no warranties, representations or agreements not expressed herein have been made by Lessor; and Lessee further acknowledges notice of the intended assignment of this lease, and upon such assignment, Lessee agrees not to assert against the assignee hereof any defense, setoff, recoupment, claim or counter-claim which Lessee may have against Lessor, whether arising hereunder or otherwise." (Emphasis added)
Defendant makes no claim that the above-quoted provision of the parties' contract was, in any respect, invalid, or that it did not have the effect of waiving, for a good consideration, as against plaintiff (the claimed bailor's assignee) in the present action, any cause of action, or defense, defendant may, otherwise, have had against Culligan. For this reason, defendant's argument fails in demonstrating that the trial court committed any error in overruling his motion that Culligan be made a party to the action, or in ordering stricken paragraphs 1, 2 and 3 of his original answer.
The above conclusion leaves to be dealt with only defendant's "PROPOSITION 4" in which he asserts, in substance, that the trial court's judgment awarded plaintiff an unauthorized, and excessive recovery. He points to the following as the only provision of the contract that is pertinent to this subject:
"If (a) Lessee shall default in the payment of any rent or in making any other payment hereunder when due, or (b) Lessee shall default in the payment when due of any indebtedness of Lessee to Lessor arising independently of this lease, or (c) Lessee shall default in the performance of any other covenant herein and such default shall continue for 5 days after written notice thereof to Lessee by Lessor, or (d) Lessee becomes insolvent or makes an assignment for the benefit of creditors, or (e) Lessee applies for or consents to the appointment of a receiver, trustee or liquidator of Lessee or of all or a substantial part of the assets of Lessee, or if such receiver, trustee or liquidator is appointed without the application or consent of Lessee, or (f) a petition is filed by or against Lessee under the Bankruptcy Act or any amendment thereto (including, without limitation, a petition for reorganization, arrangement or extension) or under any other insolvency law or law providing for the relief of debtors, then, if and to the extent permitted by applicable law, the full amount of rent then unpaid hereunder shall become due and payable forthwith at the election of Lessor and Lessor may, at its option, without notice or demand and without legal process, take possession of Equipment wherever it may be located (with all additions and substitutions) whereupon all rights of Lessee in Equipment shall terminate absolutely, but Lessee shall not be released from its obligations under this agreement until the full amount of rent unpaid has been paid in full in cash.
* * * * * *"
(Emphasis added)
Under defendant's theory, "* * * the full amount of rent then unpaid * * *" when this action was commenced in January, 1965, could only have meant the amount then due under the terms of the contract. He says that, for the above default provision to have had the effect of accelerating payment of installments not yet due under its other provisions, it must necessarily have had in it wording to the effect that "all of the remaining installments shall become due and payable at once". (Emphasis added)
Plaintiff contends that defendant's interpretation of the above-quoted provision is not the correct one, but all that he says, in support of this contention, is that defendant's argument deals with only a portion of the whole acceleration, or default, provision, out of the context of its remainder, *958 and it quotes most of that part of said provision, which follows "(f)" above, as if this was a complete answer to defendant's argument. We do not agree. On the contrary, we consider "(f)" above, no answer at all, since it deals with debtor-relief situations, not shown by the evidence at the trial, to have existed in this case.
Since defendant's argument concerning the way the above-quoted default provision in the contract should be interpreted, as distinguished from the above-quoted language he suggests as the "typical acceleration clause" (in this connection, notice Re Barnett, C.C.A., 2d Cir., 12 F.2d 73, cert. den., United Cigar Stores Co. v. Rayher, 273 U.S. 699, 47 S.Ct. 94, 71 L.Ed. 846, discussed in the annotation at 99 A.L.R. 42, 55) is not answered by plaintiff, and there was no evidence at the trial as to whether, or not, plaintiff had been damaged, by defendant's default, to the extent of the entire rental balance sued for, thus leaving room for the question as to whether such contract provision was for damages, or for an illegal penalty, in the event of the lessee's breach (in this connection, notice Tit. 15, O.S. 1961, secs. 213-215, both incl.), we are inclined to construe said provision as defendant contends for. Under such a construction, we must conclude that only the rental installments due beginning September 15, 1964, and on the 15th of each month thereafter, to and including January 15, 1965, were (due, payable, and) "unpaid", at the time plaintiff filed its petition on January 29, 1965. As far as the record shows, defendant made no such payments during the pendency of this action, and up to and including, the date judgment was entered therein on April 15, 1966. Accordingly, on the latter date, the principal sum of $1,500.00 was due and unpaid to plaintiff under the terms of the contract, as herein interpreted. Considering plaintiff's petition as amended to conform to such fact (Gragg v. James, Okl., 452 P.2d 579, syll. 2) it is our opinion that said sum was the principal sum the trial court should have awarded plaintiff in its judgment. It therefore follows that its judgment in the larger sum of $3,359.00 was excessive to the extent that it exceeded that figure, and constituted error.
In accord with the foregoing, the judgment of the trial court is hereby affirmed, upon condition that, within 10 days from the date this court's mandate is filed in the trial court, plaintiff file a remittitur of said court's judgment in the amount of $1,859.00; otherwise, said judgment is reversed and remanded to said court with directions to grant the defendant a new trial.
BERRY, V.C.J., and DAVISON, WILLIAMS, JACKSON and LAVENDER, JJ., concur.
IRWIN, C.J., and HODGES and McINERNEY, JJ., dissent.